# United States District Court
# Northern District of Indiana

ROOSEVELT LEMONS, )
                               )
         Plaintiff, )
                               )   Civil Action No. 3:08-CV-423 JVB
     vs. )
                               )
P. DRAGMISTER and MR. BURGER, )
                               )
         Defendants. )

**OPINION AND ORDER**

Roosevelt Lemons, a *pro se* prisoner, was granted leave to proceed on claims against the defendants, LaPorte County Jail guards, alleging that they used excessive force against him in violation of his Fourteenth Amendment rights. (DE 6.) Presently before the Court is the Defendants' motion for summary judgment.[1] (DE 25.) In their motion, the Defendants argue that they are entitled to judgment on grounds of failure to exhaust administrative remedies and qualified immunity. (DE 26.) Lemons has filed an opposition to the motion. (DE 31.)

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986.) A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986.) "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

---

[1] The motion was originally filed as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), but since it attached and relied on documents outside the record, the Court converted it to a motion for summary judgment. (DE 29.)

judgment." *Id.* In determining whether a genuine issue of material fact exists, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

### A. Exhaustion

The Defendants first argue that they are entitled to judgment because Lemons did not properly exhaust his administrative remedies. (DE 26 at 5-12.) Under the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing claims about prison conditions under 42 U.S.C. § 1983 until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is designed to provide state corrections officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The failure to exhaust is an affirmative defense on which the Defendants bear the burden of proof. *Dole v. Chandler.*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). His filings also must contain the "factual particularity" required by prison rules. *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

Here, the record shows that Lemons filed two detailed grievances over the events giving rise to this lawsuit. (DE 27 at 14, 18.) However, the Defendants argue that these grievances were "defective" for various procedural reasons. (DE 26 at 8.) In the first grievance, Lemons, who is

2

African-American, claimed the Defendants told him they were members of the Aryan Nation gang and threatened that, in his words, "I will get the shit beat out of me." (DE 27 at 14.) In the second grievance, Lemons stated that he was beaten. (DE 27 at 18.) He repeated his allegation that the officers told him they were members of the Aryan Nation gang, and further stated that they came to his cell, used racial slurs against him, laughed at him, maced him in the eyes, and beat him, causing him to suffer a head injury. (*Id.*)

The Defendants argue that the second grievance was inadequate because it did not specifically name the two Defendants as his attackers. (*See* DE 26 at 11.) However, it is clear from reading the two grievances, both of which are dated December 19, 2007, that Lemons is complaining about the Defendants. In the first grievance he mentioned the Defendants by name as having threatened him, and in the second grievance, he reiterated his statements that the "officers" told him they were members of the Aryan Nation and had been threatening him, and that they later beat him and maced him in the face. (*Id.*) The records submitted by the Defendants indicate that jail officials were fully aware which officers were involved in this incident, since both of the Defendants submitted reports detailing the incident (which resulted in Lemons being placed in disciplinary segregation), acknowledging that they had sprayed him with mace and forcibly restrained him. (DE 27 at 32-35.) A jail official responded to Lemons' complaints, stating that he had reviewed the incident and declined to bring charges against any of the officers involved. (DE 27 at 15.) Moreover, the jail policy submitted by the Defendants does not specifically require an inmate to name the person or persons about whom he is complaining. (*See* DE 27 at 10-11.) When prison rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong*, 297 F.3d at 649. Lemons' grievances

satisfy this standard.

The Defendants' also argue that Lemons did not properly exhaust because he failed to sign the grievance forms. (DE 26 at 11.) Although the jail policy states that the grievance should be signed, there is no signature line contained on the forms provided by the jail. (*See* DE 27 at 14, 18.) Lemons filled out the forms provided to him completely, including providing his name. (*See id.*) Requiring a signature without providing a signature line on the form (and barring a federal lawsuit where the inmate fails to sign) would effectively sand-bag unsuspecting inmates, depriving them of their right to seek redress in federal court for violations of their constitutional rights. "[N]o prison system may establish a [grievance] requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F3.d at 649. Moreover, there is no indication from the documents submitted by the Defendants that jail officials rejected Lemons' grievances because they were not signed. Where the prison considers a grievance on the merits despite the lack of compliance with procedural rules, the prisoner has exhausted his administrative remedies. *Pozo*, 286 F.3d at 1025. Accordingly, the Court rejects this argument.

The Defendants further assert that Lemons directed the grievances to the wrong person, but the record shows that Lemons completed the forms and turned them into a jail guard. (DE 27 at 14, 18.) The fact that he wrote "Sheriff" or "Captain Bell" at the top of the form has little significance, since it would be up to jail personnel, and not the *pro se* inmate, which jail official ultimately decided the grievance. Again, there is no indication from the record that jail officials rejected Lemons' grievances for this procedural reason. *See Pozo*, 286 F.3d at 1025.

The Defendants also find it curious that the second grievance was dated December 19,

4

2007, but was not received by a guard until January 2, 2008.[2] (DE 26 at 10-11.) However, they do not expressly argue that the second grievance was untimely, nor does it appear they would have a basis for doing so since the jail policy they submitted does not contain a specific deadline for filing a grievance. (*See* DE 27 at 10-11.) The Defendants also question the "reliability" of the grievances, noting that in the second grievance Lemons erroneously stated that he completed the form at 1:00 p.m. on December 19, 2007, when the underlying incident did not occur until around 3:00 p.m. that day. (DE 26 at 11.) This minor irregularity has little significance, however, since it is apparent that the second grievance was written after the incident in question. Lemons described the incident in detail in his grievance, and the Defendants do not dispute that they went to Lemons' cell and used force against him on that date. The issue presently before this Court is not the underlying truth of the statements contained in Lemons' grievances, but whether he gave the prison a proper opportunity to address his claims before filing this lawsuit. The Court concludes that he did so.

For these reasons, the Defendants have failed to show that Lemons did not properly exhaust his administrative remedies.

### B. Qualified Immunity

Finally, Defendants claim that they are entitled to qualified immunity for their actions. (DE 26 at 14-16.) Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Pearson v. Callahan*, ---U.S.---, 129 S. Ct. 808, 815 (2009) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).) Qualified immunity is "an

---

[2] The record indicates that Lemons was in segregation during this period, which may account for the delay. (*See* DE 27 at 18.)

immunity from suit rather than a mere defense to liability." *Id*. Courts use a two-part inquiry to determine whether the defense applies: (1) whether the facts alleged by the plaintiff show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.*; *Hanes v. Zurick*, 578 F.3d 491, 494 (7th Cir. 2009).

The Defendants acknowledge, as they must, that the law was clearly established at the time of this incident that they could not use excessive force against Lemons.[3] However, they argue that they did not use excessive force against him because he refused to obey a direct order and resisted their efforts to restrain him. (DE 26 at 14-15; *see also* DE 27 at 32-35.) The difficulty with the Defendants' argument is that it requires the Court to credit the Defendants' version of what occurred, whereas in his complaint, Lemons alleges that the guards beat him without justification and continued to beat him even after he had been incapacitated by the mace. (DE 1 at 3.) Indeed, the Defendants acknowledge this allegation in their motion. (*See* DE 26 at 14 ("the Plaintiff alleges in his complaint that he was beat for no reason. . . .").) Defendants do not argue that Lemons' allegations fail to state an excessive force claim; instead they are essentially arguing that under their version of the facts, Lemons' claims have no merit.

In deciding whether Defendants are entitled to invoke qualified immunity to preclude this suit, the Court must determine whether the facts alleged by the Plaintiff show that the

---

[3] The Court notes that all of the summary judgment filings indicate that the underlying incident occurred on December 19, 2007, whereas in the complaint Lemons states that the incident occurred on "11-14-07." (*See* DE 1 at 3.) It appears the date contained in the complaint was likely a scrivener's error; however, assuming there is a dispute about the date the incident occurred, it is not material to the resolution of the motion presently before the Court.

Defendants violated his constitutional rights.[4] *Pearson*, 129 S. Ct. at 815; *Hanes*, 578 F.3d at 494. Lemons has alleged that the Defendants violated his clearly established rights by using excessive force against him, and the facts as he alleged them could establish such a violation. At this stage, this is enough to let the case go forward.

For the foregoing reasons, the Court **DENIES** the Defendants' motion for summary judgment (DE 25). The stay of merits discovery is lifted and the case may proceed, with a scheduling order to be entered separately by the assigned Magistrate Judge.

**SO ORDERED** on February 9, 2010.

 s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division

---

[4] This case is in a somewhat unusual procedural posture because the defense motion for judgment on the pleadings had to be converted to a motion for summary judgment. However, the case is effectively still at the pleading stage and no discovery has yet occurred.